UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAKERIA METHVIN,

       Plaintiff,

v.                                    Case No. 1:23-cv-878

COMMISSIONER OF SOCIAL           Hon. Ray Kent
SECURITY,

       Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for child disability benefits (CDB).

## I.     Background

On February 26, 2021, plaintiff filed an application for child's insurance benefits beginning on August 1, 2010.  PageID.32.  Plaintiff identified 19 disabling conditions including major depressive disorder, chronic migraine headaches, post-traumatic stress disorder (PTSD), interstitial cystitis, endometriosis, and chronic pain syndrome.  PageID.266.  While plaintiff has graduated from high school, she has had no past relevant employment.  PageID.41, 55, 267-268.  The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 15, 2022.  PageID.42.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## II.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990).  The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

"[T]he Social Security Administration has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22 (20 CFR 404.350(a)(5))."  PageID.33-34.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile." *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

### III.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff had not attained the age of 22 as of the alleged disability onset date of August 1, 2010, and that she has not engaged in substantial gainful activity since the alleged onset date. PageID.34.  At the second step, the ALJ found that plaintiff has the following severe impairments: depressive disorder; bipolar disorder; PTSD; anxiety disorder; somatic disorder; migraines; and obesity.  PageID.34.  At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.35.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can be exposed to dust, odors, fumes, and pulmonary irritants occasionally, and can never be exposed to extreme cold, extreme heat, or vibration. She can work in a moderate noise environment. The claimant is able to perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work).  She is able to interact occasionally with coworkers and never with the public. The claimant is limited to routine workplace changes in tasks or demands.

PageID.37.  The ALJ also found that plaintiff had no past relevant work. PageID.40.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the medium exertional level in the national economy.  PageID.41-42. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy including store laborer (176,000 jobs), cafeteria counter supply worker (62,000

jobs), and router (81,000 jobs).  PageID.41-42.  Accordingly, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, at any time from August 1, 2010 (the alleged onset date) through September 15, 2022 (the date of the decision).  PageID.42.

## IV.    DISCUSSION

Plaintiff set forth two errors on appeal:

### A.  The ALJ's evaluation of the opinion from Kristi Stoutjesdyk, FNP, is incomplete and not supported by substantial evidence.

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency".  20 C.F.R. § 404.1520c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).

The ALJ addressed FNP Stoutjesdyk's opinions as follows:

> The medical opinions of Kristi Stoutjesdyk, FNP, are unpersuasive (Exs. 7F; 10F). The severe limitations, including that the claimant could not tolerate even low stress work and would miss more than four days of work per month, are supported by summarizing the claimant's subjective allegations, as opposed to pointing to objective testing. Moreover, the opined limitations are not consistent with the other evidence, which shows the claimant's headache symptoms had largely resolved after undergoing physical therapy, and [sic] (Exs. 1F/12; 2F/20; 4F/1; 5F/411; 9F/13).

PageID.40.  The referenced opinions, Exhibits 7F and 10F, appear to be two copies of FNP Stoutjesdyk's "Headaches Medical Source Statement" dated June 20, 2022 (PageID.1646-1649, 1932-1939).

As apparent from the quoted portion of the decision, the final sentence of the ALJ's evaluation is incomplete.  In addition, the ALJ did not explain how plaintiff's headache symptoms were "largely resolved."  The ALJ provides no timeline or details regarding the resolution of these symptoms.  While progress notes for a routine examination ("well visit") on September 23, 2021 does not mention headaches (Exh. 4F/1, PageID.485), plaintiff went to the emergency room for a migraine headache about two months later on November 14, 2021 (PageID.1926).  Plaintiff also went to the emergency room for a severe headache accompanied by vomiting and photophobia on March 11, 2022 (PageID.1911-1912) and for insomnia and migraines on April 28, 2022 (PageID.1896).  Based on this record, plaintiff was still having serious headache symptoms a few months before FNP Stoutjesdyk expressed her opinions on June 20, 2022.

For all of these reasons, the ALJ's evaluation of FNP Stoutjesdyk's statement is not supported by substantial evidence.  Accordingly, this matter will be reversed and remanded

pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner will be directed to re-evaluate FNP Stoutjesdyk's opinion.

> **B.  The ALJ erred in finding plaintiff's endometriosis, pelvic dysfunction, interstitial cystitis, and abdominal pain were non-severe impairments, and in failing to account for these impairments in the residual functional capacity (RFC) assessment.**

The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).  RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations imposed by all of his medically determinable impairments.  *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation.  *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).   The fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error.  *Id*.   In this regard, the regulations state that,

> When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.

20 C.F.R. § 404.1545(e).

Here, the issue before the Court is whether the ALJ adequately considered plaintiff's non-severe impairments of endometriosis, pelvic dysfunction, interstitial cystitis, and

abdominal pain in determining her RFC.  Plaintiff has a history of these conditions during the relevant time period (August 1, 2010 through September 15, 2022).   Plaintiff's medical records from February 4, 2021, refer to her endometriosis surgery and that plaintiff "did not have any relief in her pain so would not consider another surgery at this time."  PageID.408.  The record also referred to ongoing treatment for plaintiff's chronic pain syndrome, pelvic floor dysfunction, interstitial cystitis, and constipation.  *Id*.  During physical therapy in February 2021, plaintiff reported three surgeries in 2020: one for endometriosis; one for cysts on her tailbone; and one for her bladder.  PageID.708.[1]  In February 2021, plaintiff reported to a physical therapist that her bladder had "seized up" during the surgeries for the endometriosis and cysts, which prompted the bladder procedure, and that she had problems with her bladder since the second surgery ("she couldn't go to the bathroom but felt like she had to go all the time").  *Id*.  Plaintiff also reported that the endometriosis did not improve following the surgery and that pelvic examinations are painful.  *Id*.

At the administrative hearing, plaintiff identified the daily migraine headaches as the worst part of her physical condition. PageID.56-60, 65.   Plaintiff testified that since she graduated high school one of the reasons she was unable to work was due to "a lot of issues with my stomach" and that she would visit the hospital for stomach cramps and constipation. PageID.63-64.  In her function report, plaintiff stated that she frequently had constipation and sometimes would have to sit for an hour to urinate.  PageID.311.  In her third-party function report, plaintiff's mother stated that plaintiff goes to the bathroom and complains that she has constipation and cannot urinate.  PageID.279. Plaintiff's mother also observed that plaintiff suffers from constant abdominal pain from endometriosis.  PageID.294.

---

[1] The Court notes that the February 4, 2021 record refers to the endometriosis surgery as occurring in 2019 rather than 2020.  PageID.408.

In his decision, the ALJ found that the endometriosis and interstitial cystitis were not severe impairments:

> Treatment records also show the medically determinable impairments of endometriosis and interstitial cystitis, which I find to be non-severe. She reported having three surgeries related to her bladder in 2020 (Ex. 6F/2). The claimant reported she had issues with her bladder since the second surgery with the catheter. She described pain but was unable to further describe the pain (Ex. 6F/2). The claimant had largely unremarkable gastrointestinal workup during the period at issue, and was counselled on conservative treatment, including MiraLAX and milk of magnesia for chronic constipation (Exs. 2F/5-18; 6F/2). The record does not support durational functional limitations from these impairments. Accordingly, I find the above-described impairments to be non-severe.

PageID.35.  The ALJ also stated that he considered "all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." *Id*.

In evaluating plaintiff's RFC, the ALJ provided only a cursory discussion of plaintiff's physical impairments:

> The physical prior administrative medical findings are largely persuasive (Exs. 1A; 3A). While the initial findings are unpersuasive for the lack of finding any severe physical medically determinable impairment, the findings on reconsideration that the claimant could perform a range of medium work are supported by reference to the claimant's history of migraines and treatment for her symptoms. Moreover, the findings of avoiding concentrated exposure to work and environmental hazards, as well as to noise, are consistent with the claimant's frequent reports of migraines, but with intact neurological findings are insignificant and unremarkable neurological workup (Exs. 1F/12; 2F/20; 4F/1; 5F/411; 9F/13).

PageID.40.

An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).   Here, the

ALJ made a conclusory finding that the opinions of the non-examining physicians in Exhibits 1A and 3A were persuasive.  As one court has observed, "the ALJ was not required to specifically discuss each non-severe impairment in the RFC assessment to demonstrate that the impairments were considered."  *Smith v. Commissioner of Social Security*, 715 F. Supp. 3d 994, 999 (E.D. Mich. 2024) (citing *Emard v. Commissioner of Social Security*, 953 F.3d 844, 851-52 (6th Cir. 2020)).  As discussed, plaintiff continues to receive treatment for endometriosis, pelvic dysfunction, interstitial cystitis, and abdominal pain.  In this instance, the ALJ's consideration of these non-severe impairments was so cryptic that the Court cannot trace the path of the ALJ's reasoning.  Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner will be directed to re-evaluate plaintiff's RFC with respect to the effect of her non-severe impairments of endometriosis, pelvic dysfunction, interstitial cystitis, and abdominal pain.

## V.    Conclusion

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed (1) to re-evaluate the opinion of Kristi Stoutjesdyk, FNP, and, (2) to re-evaluate plaintiff's RFC with respect to the effect of her non-severe impairments of endometriosis, pelvic dysfunction, interstitial cystitis, and abdominal pain.  A judgment consistent with this opinion will be issued forthwith.


Dated:  November 6, 2024                          /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge